O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER MALONEY, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>INDYMAC MORTGAGE SERVICES, ONEWEST BANK FSB,<br><br>　　　　　Defendants.<br>_____ | ) Case No. CV 13-04781 DDP (AGRx)<br>)<br>)<br>) **ORDER GRANTING DEFENDANT'S MOTION**<br>) **TO DISMISS IN PART AND DENYING IN**<br>) **PART**<br>)<br>)<br>)<br>) [Dkt. No. 27]<br>)<br>)<br>) |

　　Presently before the court is Defendant OneWest Bank, FSB ("the Bank")'s Motion to Dismiss. Having considered the submissions of the parties and heard oral argument, the court grants the motion in part, denies the motion in part, and adopts the following order.

**I.　Background**

　　Plaintiff Peter Maloney purchased a condominium, secured by $158,500.00 mortgage, in 2006. (Complaint ¶ 20.) The deed required Plaintiff to acquire insurance against any hazard "for which Lender requires insurance . . . for the periods that Lender

requires." (Compl. ¶ 22.) The deed further provided that if Plaintiff failed to maintain the required insurance coverage, "Lender may obtain insurance coverage, at Lender's option and [Plaintiff's] expense." (Id. ¶ 23.) The deed also required that the insurance be maintained "in the amounts . . . and for the periods that Lender requires." (Compl., Ex. 1 ¶ 5.) More broadly, the deed allowed the Lender to "do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property" if Plaintiff failed to perform under the deed. (Compl., Ex. 1 ¶ 9.) The Bank is a national banking association. (Compl. ¶ 10.) While nonparty Fannie Mae owns Plaintiff's loan, a subsidiary of the Bank serviced the loan during all relevant time periods. (Compl. ¶¶ 10, 29.)

At some unspecified date, the Bank sent Plaintiff a letter stating that, due to a change in Federal Emergency Management Agency ("FEMA") flood maps, Plaintiff's property was located in a Special Flood Hazard Area. (Compl., Ex. 5.) As a result, the letter explained, Plaintiff's condo needed to be covered by flood insurance.[1] (Id.) The Bank sent Plaintiff a second, similar letter on September 17, 2011. (Compl., Ex. 8.) The second letter informed Plaintiff that if he did not obtain flood insurance, the Bank would have to obtain it on his behalf. The second letter explained that if the Bank obtained coverage, "the cost may be significantly higher than the premium that could be obtained if you were to contact your local agent." (Id.) The letter further disclosed that "We and/or our affiliates may receive compensation

---

[1] It appears that at least one page of this undated letter is missing from the exhibit to the complaint.

2

in connection with the insurance policy described in this letter." (Id.)

Plaintiff did not obtain flood insurance. The Bank then force-placed a $250,000 flood policy on Plaintiff's property, with an annual premium of $2,250.00. (Compl. ¶¶ 36-37.) Plaintiff alleges that the Bank received kickbacks from the insurance company in the form of "'commissions,' 'expense' reimbursements, and/or other compensation." (Compl. ¶ 45.) Plaintiff's Complaint alleges that the Bank's acts and excessive insurance requirements resulted "in unnecessary and unfair charges for force-placed flood insurance." (Compl. ¶ 44.) The Complaint alleges state law causes of action for breach of contract, unjust enrichment, breach of fiduciary duty, conversion, and unfair business practices. The Bank now moves to dismiss.

**II. Legal Standard**

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679. In

other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 679. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**III. Discussion**

    A.    Preemption

The Bank contends that Plaintiff's state law claims are preempted for a variety of reasons, each of which the court addresses in turn.

        1.    The National Flood Insurance Act

"Congress enacted the National Flood Insurance Act of 1968 in response to a growing concern that the private insurance industry was unable to offer reasonably priced flood insurance on a national basis." Flick v. Liberty Mutual Fire Ins. Co., 205 F.3d 386, 387 (9th Cir. 2000). As of 1973, federally regulated lending institutions are forbidden from making loans on structures within special flood hazard areas unless the building is covered by flood insurance. 42 U.S.C. § 4012a(b)(1)(A). Covered structures must be

insured "in an amount at least equal to the outstanding principal balance of the loan or the maximum limit of coverage made available under the [NFIA] . . ., whichever is less.[2] Id. If a lender or servicer becomes aware that a building securing a loan is inadequately covered, the lender or servicer must inform the borrower that the borrower should obtain flood coverage. 42 U.S.C. 4012a(e)(1). If the borrower ultimately fails to obtain the required coverage, the lender or servicer must obtain flood insurance on the borrower's behalf. 42 U.S.C. § 4012a(e)(2). A regulated institution that force-purchases required coverage satisfies any regulations promulgated under 42 U.S.C. § 4012a(b), "[n]otwithstanding any State or local law." 42 U.S.C. § 4012a(f)(6).

    The Bank argues that the "notwithstanding any State or local law" language of 42 U.S.C. § 4012a(f)(6) indicates that the NFIA occupies the field of flood insurance placement. (Mot. at 12; Reply at 7.) Field preemption exists when a federal law "so thoroughly occupies a legislative field that there is no room for state action in that area." Donell v. Kowell, 533 F.3d 762, 775 (9th Cir. 2008) (citing Montalvo v. Spirit Airlines, 508 F.3d 464, 470 (9th Cir. 2007)).

    The Bank cites several out-of-circuit cases to support its field preemption argument. Aside from being non-binding, these cases are distinguishable. In Wright v. Allstate Insurance Co., for example, the Fifth Circuit adopted the reasoning of the Third and Sixth Circuits in finding a flood insurance claim preempted

---

[2] The maximum amount varies, depending on the type of structure at issue. See 42 U.S.C. § 4013(b).

5

under the NFIA. Wright v. Allstate Insurance Co., 415 F.3d 384, 390 (5th Cir. 2005). The claim at issue in Wright, however, had nothing to do with forced-placement of coverage, but rather a disputed valuation of covered damage. Id. at 386. In light of that specific factual context, the court limited its preemption holding to "state law tort claims arising from claims handling . . .," with no mention of force-placed coverage. Id. at 390 (emphasis added).

Contrary to the Bank's suggestion, therefore, the Wright court did not opine that the NFIA occupies the field of flood insurance placement. Field preemption is but one of two ways in which federal law might impliedly preempt state law, the other being conflict preemption. Montalvo, 508 F.3d at 470. In C.E.R. 1988, Inc. V. Aetna Casualty and Surety Co., upon which Wright relies, the Third Circuit explicitly declined to apply field preemption in a flood insurance claim dispute case. C.E.R. 1988, Inc. V. Aetna Casualty and Surety Co., 386 F.3d 263, 269 (9th Cir. 2004). Nor did the Sixth Circuit in Gibson v. American Bankers Insurance Co. specify whether field preemption principles applied. 289 F.3d 943, 952 n.2 (Sixth Cir. 2002) (Moore, J., dissenting). As in Wright, however, the Gibson court limited its holding to claims processing disputes, declining to decide "whether policy procurement type state law claims are preempted by NFIA." Id. at 949-50.

These authorities, therefore, cannot support the Bank's contention that NFIA occupies the field of forced flood insurance placement. Furthermore, as one court in this circuit has recognized, agencies implementing the NFIA appear to agree that NFIA does not preempt all flood-insurance related claims under

6

state law. Hofstetter v. Chase Home Finance, LLC., No. C 10-1313 WHA, 2010 WL 3259773 at *11 (N.D. Cal. Aug. 16, 2010) (citing 74 Fed. Reg. 35914, 35918 (July 21, 2009) ("[T]here may be penalties for over-insurance under applicable State law.")). This court does not address whether the NFIA preempts claims-processing disputes because Plaintiff here raises no such claims. Plaintiff's forced-placement claims, however, are not field preempted.

### 2. Filed Rate Doctrine

The Bank also argues that Plaintiff's claims are barred by the filed rate doctrine. (Mot. at 14.) The court-created filed rate doctrine holds that any rate approved by a government regulatory agency is reasonable, and therefore cannot be judicially challenged by a ratepayer. Wegoland Ltd. V. NYNEX Corp., 27 F.3d 17, 19 (2nd Cir. 1994). In California, property insurance rates, including flood insurance rates, must be approved by the California Department of Insurance. Cal. Ins. Code § 1861.01(c). Laws governing business generally also apply to the insurance industry. Cal. Ins. Code §§ 1860.2, 1861.3(a). However, the California Insurance Code also states that "[n]o act done, action taken or agreement made pursuant to the authority conferred by this chapter shall constitute a violation of or grounds for prosecution or civil proceeding under any other law of this State . . . which does not specifically refer to insurance." Cal. Ins. Code § 1860.1. In an attempt to harmonize these conflicting principles, California courts have held that actions taken pursuant to ratemaking authority, including the charging of an approved rate, are exempt from other, non-insurance-related laws. MacKay v. Superior Court, 188 Cal. App. 4th 1427, 1443 (2010). California's statutory scheme

is thus analogous to, albeit distinct from, the filed rate doctrine. Walker v. Allstate Indemnity Co., 77 Cal. App. 4th 750, 757 n.4 (2000).[3]

The Bank argues that Plaintiff's claims, though pled as contract and tort claims, are actually challenges to the premiums Plaintiff was required to pay on the force-placed flood insurance policies. In other words, the Bank contends that the "kickbacks" or commissions underpinning Plaintiff's complaint are merely components of a government-approved rate. As such, the argument goes, the filed rate doctrine and California Insurance Code bar Plaintiff's state law claims.

Defendant cites Singleton v. Wells Fargo Bank, N.A., No. 12CV216-NBB-SAA, 2013 WL 5423917 (N.D. Miss. Sept. 26, 2013), to support its argument in favor of broad application of the filed rate doctrine. Indeed, the Singleton court did apply the doctrine to bar kickback claims against a bank. Singleton, 2013 WL at *2. Unlike Plaintiff here, however, the Singleton plaintiff specifically alleged that she was charged "exorbitant" and "illegal" rates. Id. Absent such explicit challenges to the legality of an approved rate, other out-of-circuit courts have refused to apply the filed rate doctrine. See, e.g. Ables v. JPMorgan Chase Bank, N.A., 678 F.Supp.2d 1273 (S.D. Fla. 2009); Kunzelman v. Wells Fargo Bank, N.A., No. 11-cv-81373-DMM, 2012 WL 2003337 (S.D. Fla. June 4, 2012).

---

[3] California courts are split as to whether the judicially created filed rate doctrine applies. See Leghorn v. Wells Fargo Bank, N.A., 550 F.Supp.2d. 1093, 1115 (N.D. Cal. 2013).

8

1    Courts in this circuit have adopted the same approach.  In
2 Leghorn v. Wells Fargo Bank, N.A., 550 F.Supp.2d. 1093, 1115-16
3 (N.D. Cal. 2013), the court explained, with reference to
4 allegations similar to those here, that kickback claims did not
5 present a challenge to an insurance rate itself, but rather the
6 lender/servicer's decision to favor one particular insurance
7 carrier.  This court agrees.  "Just because the damages are based
8 on increased costs incurred as a result of the alleged kickback
9 scheme does not transform a challenge to conduct and practices into
10 a challenge to the premiums."  Ellsworth v. U.S. Bank, N.A., 908
11 F.Supp.2d 1063, 1083 (N.D. Cal. 2012).  Furthermore, even putting
12 aside the question whether the filed rate doctrine applies to a
13 claim brought against a party other than an insurer, the Bank's
14 choice of carriers is not dependent upon or made pursuant to any
15 ratemaking authority under the California Insurance Code.  Thus,
16 neither the Insurance Code nor the filed rate doctrine bar
17 Plaintiff's claims.
18         3.   Home Owners' Loan Act and National Bank Act
19    The Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461 et seq.,
20 granted the Office of Thrift Supervision ("OTS") broad authority to
21 regulate federal savings associations.  Silvas v. E*Trade Mortgage
22 Corp., 514 F.3d 1001, 1005 (9th Cir. 2008).  One OTS regulation,
23 12 CFR § 560.2(a), entitled "Occupation of field," stated that
24 "[p]ursuant to . . . HOLA, OTS is authorized to promulgate
25 regulations that preempt state laws affecting the operations of
26 federal savings associations . . . .  OTS hereby occupies the
27 entire field of lending regulation for federal savings
28 associations."  Preempted state laws include those that impose

requirements regarding the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages[.]" 12 CFR § 560.2(b)(10). The regulations further provided, however, that state laws, including contract and tort laws, that "only incidentally affect the lending operations of Federal savings associations" are not preempted. 12 CFR § 560.2(c).

On July 21, 2011, however, the Dodd-Frank Act transferred supervisory authority from OTS to the Office of the Comptroller of the Currency ("OCC"). 12 U.S.C. § 5412. All of the events at issue here occurred after this transfer. The Dodd-Frank Act further provided that HOLA does not occupy the field of lending regulations for thrifts, and that preemption under HOLA is governed by the same standards applicable to national banks. See Settle v. World Savings Bank F.S.B., No. ED CV 11-800 MMM; 2012 WL 1026103 at *13 (C.D. Cal. Jan. 11, 2012). Those standards, set forth by the National Bank Act ("NBA") and its implementing regulations, are more lenient and less all-encompassing than the former HOLA standards. See Tanburri v. Suntrust Mortgage, Inc., 875 F.Supp.2d 1009, 1019-20 (N.D. Cal. 2012); 12 U.S.C. § 21; 12 C.F.R. § 34.4.

Under NBA regulations, "a national bank may make real estate loans . . . without regard to state law limitations concerning . . . the ability of a creditor to require or obtain . . . insurance for other collateral." 12 CFR § 34.4(a). State laws regarding the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages" are also preempted. Id.; Martinez v. Wells Fargo Home Mortgage, Inc., 598 F.3d 549, 555 (9th Cir. 2010) ("[S]tate laws that obstruct, impair, or condition

10

a national bank's ability to fully exercise its Federally authorized real estate lending powers are preempted." (internal quotation omitted).

States may, however, "regulate the activities of national banks where doing so does not prevent or significantly interfere with the national bank's or the national bank regulator's exercise of its powers." <u>Watters v. Wachovia Bank, N.A.</u>, 550 U.S. 1, 12 (2007). Consistent with this principle, state laws regarding contracts, torts, and any other laws with only incidental effect on lending operations are not preempted. 12 CFR § 34.3(b); <u>Martinez</u>, 598 F.3d at 555 ("State laws of general application, which merely require all businesses (including national banks) to refrain from fraudulent, unfair, or illegal behavior, do not necessarily impair a bank's ability to exercise its real estate lending powers.").

The Bank argues that Plaintiff's state law claims implicate the Bank's discretionary power to impose non-interest fees and charges in accordance with sound banking principles and judgment. 12 CFR § 7.4002. Plaintiff's complaint, however, does not allege that the Bank charges any particular fee at all. As discussed above in the filed rate context, Plaintiff's claims do not challenge any fee imposed by the Bank, but rather question the method by which the Bank selects an insurance carrier. <u>See</u> <u>Ellsworth</u>, 908 F. Supp. 2d at 1078; <u>Leghorn</u>, 2013 WL at *16; <u>Cannon v. Wells Fargo Bank N.A.</u>, 917 F.Supp.2d 1025, 1049-50 (N.D. Cal. 2013.) The Bank has not demonstrated that the broadly applicable state laws at issue here prevent it from obtaining flood insurance or interfere in any meaningful way with its ability to do so. Accordingly, the NBA does not preempt Plaintiff's claims.

11

B.  Sufficiency of State Law Claims

  1.  Breach of Contract

A breach of contract claim requires, as a matter of course, an allegation of a breach. See, e.g. McNeary-Calloway v. JPMorgan Chase Bank, NA, 863 F.Supp.2d 928, 954 (N.D. Cal. 2012). The Bank argues that Plaintiff has failed to allege a breach because (1) the deed of trust allows the Bank to require flood insurance, (2) the deed allows the Bank to determine the proper amount of coverage, and (3) the deed does not prohibit the payment or receipt of commissions.

Defendant is correct that Section 5 of the deed of trust allows it to require flood insurance and to determine the period and amount of such coverage. That power, however, is not unbridled. Section 9 of the deed states that the Lender (or, in this case, the Bank as servicer), "may do . . . whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument . . . ." These terms are identical to those at issue in other, similar cases, including Ellsworth. Ellsworth, 908 F.Supp.2d at 1084-85.

The fundamental goal of contract interpretation is to give effect to the mutual intention of the parties." Bank of the West v. Superior Court, 2 Cal.4th 1254, 552 (1992). The provisions of a contract must be read in context, taking into account the circumstances of the case and the language of the contract in its entirety. Universal City, 208 Cal.App.4th at 737. Clear and explicit contractual language controls, and contractual claims may be resolved on a motion to dismiss when such terms are at issue.

12

Bank of the West, 2 Cal.4th at 552; Monaco v. Bear Stearns Residential Mortgage Corp., 554 F.Supp.2d 1034, 1040 (C.D. Cal. 2008).  But where the language is ambiguous, such that is is capable of two or more reasonable interpretations and therefore leaves doubt as to the parties' intent, a motion to dismiss must be denied.  Monaco, 554 F.Supp.2d at 1041.

Here, as in Ellsworth, the tension between the discretion granted to the Bank by section 5 of the agreement and the limitations imposed by the "reasonable or appropriate" language of section 9 create ambiguities regarding the authorized level of insurance and the propriety of commissions that cannot be resolved at this stage.  See Ellsworth, 908 F.Supp.2d at 1084-85.  The Bank's motion to dismiss Plaintiff's breach of contract claim is, therefore, denied.[4]

        2.    Unjust Enrichment

Plaintiff's Complaint asserts causes of action for both breach of contract and unjust enrichment.  A plaintiff may not, however, recover on an unjust enrichment or quasi contract claim if the parties have an enforceable agreement covering the same subject matter.  Sacramento E.D.M. Inc. V. Hynes Aviation, Indus., Inc., 965 F.Supp.2d 1141, 1154 (E.D. Cal. 2013).  Though Federal Rule of Civil Procedure 8(d)(3) allows inconsistent claims to be pled, Rule 8 does not allow a plaintiff to circumvent state law by stating a

---

[4] Defendant argues briefly, in a footnote, that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing fails for the same reasons advanced with respect to the breach of contract claim.  Having concluded that Plaintiff's breach of contract claim survives, the court notes that Plaintiff's good faith and fair dealing claim survives for similar reasons.  See also Leghorn, 950 F.Supp.2d at 1119-20.

13

claim for both express and quasi contract. See <u>In re Facebook Privacy Litigation</u>, 791 F.Supp.2d 705, 718 (N.D. Cal. 2011) ("Although Rule 8 . . . allows a party to state multiple, even inconsistent claims, the rule does not allow a party invoking state law to assert an unjust enrichment claim while also alleging an express contract."); <u>Custom LED, LLC v. eBay, Inc.</u>, No. C 12-350 SI, 2012 WL 1909333 at *5 (N.D. Cal. 2012).[5] Plaintiff's unjust enrichment claim is dismissed with prejudice.

### 3. Breach of Fiduciary Duty

Plaintiff's Complaint alleges that a fiduciary relationship arose between he and the Bank because the Bank held money in escrow for flood insurance premiums. (Compl. ¶¶ 97-98.) Generally, financial institutions operating as conventional lenders of money do not owe fiduciary duties to borrowers. <u>Gustafson v. BAC Home Loans Servicing, LP</u>, No. SACV 11-915-JST, 2012 WL 7051318 at *7 (C.D. Cal. Dec. 20, 2012). Force-placing insurance falls within a loan servicer's conventional role. <u>Id.</u> The provision of some escrow services does not fall outside that conventional role, and does not create a fiduciary relationship. <u>Id.</u>; <u>See also</u> <u>Rose v. J.P. Morgan Chase, N.A.</u>, No. CIV. 2:12-225 WBS, 2012 WL 1574821 at *3 (E.D. Cal. May 3, 2012). Plaintiff's breach of fiduciary duty claim is dismissed with prejudice.

### 4. Conversion

A claim for conversion requires "(1) ownership of or right to possess the property, (2) the defendant's conversion by a wrongful

---

[5] Courts are split as to whether unjust enrichment is an independent cause of action in California. See <u>Cheung v. Wells Fargo Bank, N.A.</u>, 987 F.Supp.2d 972, 979 (N.D. Cal. 2013).

14

act or disposition of the property, and (3) damages." Hopkins v. Wells Fargo Bank, N.A., No. CIV. 2:13-00444 WBS, 2013 WL 2253837 at *9 (E.D. Cal. May 22, 2013). Plaintiff does not appear to dispute, that the Bank did have the right to use escrow funds to pay for flood insurance. Plaintiff contends, however, that the disposition of escrow funds was wrongful because the Bank was not authorized to spend escrow funds pursuant to a kickback scheme and was not authorized to purchase the level of insurance that it did. (Opp. at 16.) Those allegations are the core of Plaintiff's breach of contract claims, and are better resolved in that context. See Hopkins, 2013 WL 2253837 at *10 (dismissing conversion claim premised upon same conduct as breach of contract claim); McKenzie v. Wells Fargo Bank, N.A, 931 F.Supp.2d 1028, 15-16 (N.D. Cal. 2013) (dismissing conversion claim regarding force-placed flood insurance premiums).

**IV. Conclusion**

For the reasons stated above, Defendant's Motion to Dismiss is GRANTED in part and DENIED in part. Plaintiffs' claims are not preempted. Plaintiff's claims for unjust enrichment, breach of fiduciary duty, and conversion are DISMISSED, prejudice. In all other respects, Defendant's motion is DENIED.[6]

IT IS SO ORDERED.

Dated: November 17, 2014

DEAN D. PREGERSON
United States District Judge

---

[6] Because Plaintiff's breach of contract and good faith and fair dealing claims survive, so too does his unfair competition claim under California Business & Professions Code § 17200. See Leghorn, 950 F.Supp.2d at 1120-21.